UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KENNETH THOMPSON,

                                        Plaintiff,


                v.                                          9:07-CV-12
                                                            (GLS/GJD)
G.S. GOORD, Commissioner;
H.D. GRAHAM, Superintendent, *et al.*,

                                        Defendants.
_____

KENNETH THOMPSON, Plaintiff *pro se*
HEATHER R. RUBINSTEIN, Ass't Attorney General for Defendants.

GARY L. SHARPE, DISTRICT JUDGE

## DECISION AND ORDER

**I**    **Introduction**

        In this civil rights complaint, transferred from the Western District of

New York, plaintiff alleges that on January 6, 2006, while being escorted to

a disciplinary hearing, he was subjected to excessive force by defendant

Corrections Officers Cady and Cochrane. (Compl. at 5)(Dkt. No. 1).

Plaintiff also appears to allege due process and equal protection violations

as well as claims of "failure to protect" and denial of medical treatment. *Id.*

at 4-6.[1]  Plaintiff states simply that he is seeking "monetary" relief. (Compl.

_____

        [1] Although plaintiff's complaint is written on a form, he includes a page between
numbered pages 4 and 5.  The court will refer to this page as 4-a.

at 6).

Presently before the court[2] is defendants' motion for partial summary judgment pursuant to FED. R. CIV. P. 56. (Dkt. No. 43).  Plaintiff has responded in opposition to the motion. (Dkt. No. 50).  For the following reasons, this court agrees with defendants and will dismiss the complaint in part.

## II.    Summary Judgment Standard

Summary judgment is appropriate "if the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Globecon Group, LLC v. Hartford Fire Ins. Co.,* 434 F.3d 165, 170 (2d Cir. 2006)(citation omitted).  The moving party has the burden to show the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When evaluating the material facts, the court must "construe the evidence in the light most favorable to the non-moving party." *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir.

---

[2] The parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been rescinded for purposes of this motion, and as such, any appeal taken from this order will be to the Court of Appeals for the Second Circuit.

2

1999).  This burden can be met if the moving party "can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).

If the moving party satisfies its burden, the non-moving party must offer specific evidence showing that a genuine issue of material fact warrants a trial. *Celotex*, 477 U.S. at 324.  A genuine dispute arises only if the evidence would allow a reasonable jury to return a verdict for the non-movant. *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)(citation omitted).  The bald assertion of a factual dispute will not defeat a properly supported motion. *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994)(citation omitted).  "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir. 1998).  Only disputes over facts that might affect the outcome of the case under the governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

III.  **Facts**

The complaint is unclear regarding the facts in this case.  The

complaint contains one page in which plaintiff raises five claims. Compl. at 4-a.  The facts forming the basis of plaintiff's complaint begin with plaintiff being escorted to a disciplinary hearing at Auburn Correctional Facility by defendants Cochrane and Cady.  A use of force incident resulted from that escort. The court has reviewed the five claims raised by plaintiff in his complaint and has attempted to determine the nature of plaintiff's claims by reading the complaint in conjunction with the attached exhibits and the documentary evidence submitted by defendants in support of their motion for partial summary judgment.

On January 6, 2006, plaintiff was released from his cell in order to attend a disciplinary hearing. Def. Rule 7.1 Statment,[3] Ex. 1 at 1 (Dkt. No. 43-4) (Unusual Incident Report).  He was being escorted by defendants Cochrane and Cady. *Id.*  The Unusual Incident Report (UI) states that as the group reached the "lock box" area, plaintiff was directed by defendant Cochrane to submit to a standard pat frisk. *Id.*  As defendant Cochrane conducted the pat frisk, he felt an object in the front pocket of plaintiff's pants. *Id.*  According to the UI, plaintiff suddenly turned and elbowed defendant Cochrane in the chest. *Id.*  At that time, defendant Cady began

_____

[3] The defendants' exhibits are all attached to their Local Rule 7.1 Statement.  The court will simply refer to the defendants' exhibits by number.

to assist Officer Cochrane, and both officers brought plaintiff to the floor. *Id.*

The UI states that plaintiff continued to struggle, attempting to retrieve the object from his pocket. *Id.*  The officers gained control of plaintiff's arms, and defendant Cochrane seized a "shank type weapon" from the right front pocket of plaintiff's pants. *Id.*  Plaintiff was handcuffed and taken to the Special Housing Unit (SHU), where he was "checked by medical with no injuries noted." *Id.* at 1-2.  The weapon recovered from plaintiff's pocket was made from an eyeglass bow with the plastic melted to expose the metal frame that had been sharpened to a point. *Id.* at 1.

In addition to the UI, a "Use of Force Report" was prepared as a result of the incident. *Id.* at 5-7.  The nurse who examined plaintiff completed a treatment report that is Part B of the Use of Force Report. *Id.* at 6.  Nurse Androsko stated that plaintiff claimed injuries to his scalp, left arm, lower legs, and feet. *Id.*  Nurse Androsko observed no injuries or redness "on stripped visual exam." *Id.*  The nurse stated that plaintiff could walk, lift his legs, and bend over with no apparent difficulty. *Id.*

Plaintiff was given a misbehavior report, charging him with assault on staff, failure to obey a direct order, and possession of a weapon. Defs. Ex. 2.  Plaintiff participated in a Tier III disciplinary hearing, conducted by

Captain Gummerson[4] on January 12, 2006. Defs. Ex. 3 (Hearing Transcript

(T)).  A review of the hearing transcript shows that plaintiff did not speak

during the hearing, and, Captain Gummerson adjourned the hearing to

obtain the testimony of Nurse Administrator Ryerson. (T. at 5).  Nurse

Ryerson testified that plaintiff was "supposed to be in possession of

hearing aides [sic] and with those hearing aides [sic] he has functional

hearing." (T. at 6).  Nurse Ryerson also testified that plaintiff "may have a

little speech impediment but he takes it to excess." *Id.*  Based on this

testimony, Captain Gummerson continued the hearing, found plaintiff guilty

of the misbehavior, and sentenced him to twelve months in SHU, together

with loss of privileges and a twelve month loss of good time. (T. at 7) &

Defs. Ex. 4 (Hearing Disposition).

Plaintiff appealed the hearing disposition, and though the disposition

was initially affirmed, it was administratively reversed on June 8, 2006.

Defs. Ex. 7.  The disposition was reversed "after discussion with the

Attorney General's Office due to failure to fully address hearing impairment

on record." *Id.* at 2.  The administrative reversal occurred after plaintiff had

filed an Article 78 proceeding in Chemung County Supreme Court,

---

[4] Captain Gummerson is not a defendant in this case.

challenging the disciplinary determination. *See* Pl. Ex. (Dkt. No. 1-4 at 1-12).  On June 8, 2006, Assistant Attorney General Geoffrey B. Rossi wrote to the presiding Supreme Court Judge, requesting dismissal of the Article 78 proceeding, based upon the administrative reversal. Pl. Ex. (Dkt. No. 1-3 at 6).  On July 19, 2006, the court dismissed plaintiff's Article 78 proceeding as moot.[5] Pl. Ex. (Dkt. No. 1-2 at 3).

With the above background, the court will attempt to interpret plaintiff's claims.[6]  Plaintiff alleges that (1) his due process[7] rights were violated at the Tier III hearing; (2) his right to equal protection was violated; (3) he was subjected to excessive force by defendants Cochrane and Cady; (4) defendants failed to protect him when they did not transfer him out of Auburn because he had a disability; and (5) he was denied proper medical treatment. Compl. at 4-a.

---

[5] The court dismissed the Article 78 proceeding over plaintiff's objection that he did not receive "all the relief [to] which he [was] entitled." *In re Thompson*, No. 2006-1481 n.1 (S. Ct. Chemung Cty. July 19, 2006) (Dkt. No. 1-2 at 3).  Plaintiff wrote the state court two letters, complaining about the denial of his hearing aids and other medical treatment, but the court found that these claims had not been included in the initial petition and were, thus, not before the court. *Id.*

[6] Courts have a duty to interpret *pro se* submissions to raise the strongest arguments they suggest. *Lewis v. Rawson*, 564 F.3d 569, 575 n.8 (2d Cir. 2009) (citing *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)).

[7] In the complaint, plaintiff's first "claim" also contains a statement that he was denied "due process" when he was not "taken . . . to medical."  However, he repeats this statement in his fifth claim, entitled "Denial of Medical Treatment," and the court has, thus, omitted this statement from his first "claim."

Plaintiff's version of the use of force is quite different than defendants.  Plaintiff alleges that when he and defendants Cochrane and Cady arrived at the lock box, defendant Cochrane "slammed" plaintiff into the lock box, "cuffed" him and tried to put something in his pocket. Compl. at 5.  Plaintiff claims that he was then "slammed" into the ground and punched by defendant Cady, while defendant Cochrane held him down. *Id.* Defendants are ***not*** moving for summary judgment on the excessive force claim.

## IV.  Discussion

### A.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act, (PLRA), 42 U.S.C. § 1997e(a) requires an inmate to exhaust all available administrative remedies prior to bringing a federal action.  This requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes and regardless of the subject matter of the claim. *See e.g. Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004).

Inmates must exhaust their administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.  The failure to exhaust is an affirmative defense

that must be raised by the defendants. *Scott v. Del Signore*, 2005 U.S.
Dist. LEXIS 6070, *12-15 (W.D.N.Y. Feb. 18, 2005) (citing *inter alia*
*Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004)).  As an affirmative
defense, it is the defendants' burden to establish that plaintiff failed to meet
the exhaustion requirements. *Id.* at *12-13 (citing *Giano,* 380 F.3d at 675).

In *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 922-23 (2007), the
Supreme Court held that in order to properly exhaust an inmate's
administrative remedies, he must complete the administrative review
process in accordance with the applicable state rules. *Id.* (citing *Woodford*
*v. Ngo*, 548 U.S. 81 (2006)).  In *Woodford*, the Court held that "proper"
exhaustion means that the inmate must complete the administrative review
process in accordance with the applicable procedural rules, including
deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at
90-103.  In *Woodford*, the Court concluded that the inmates did not
properly exhaust their administrative remedies when their grievances were
dismissed because the inmates had missed the deadlines set forth in the
grievance procedure. *Id.* at 93.

The grievance procedure in New York is a three-tiered process.  The
inmate must first file a grievance with the Inmate Grievance Resolution

Committee (IGRC). N.Y. COMP. CODES R. & REGS. (NYCRR), tit. 7 §§ 701.5

(a)(1) and (b).  An adverse decision of the IGRC may be appealed to the

Superintendent of the Facility. *Id*. § 701.5(c).  Adverse decisions at the

Superintendent's level may be appealed to the Central Office Review

Committee (CORC). *Id*. § 701.5(d).  The court also notes that the

regulations governing the Inmate Grievance Program encourage the

inmate to "resolve his/her complaints through the guidance and counseling

unit, the program area directly affected, or other existing channels (informal

or formal) prior to submitting a grievance." *Id.* § 701.3(a)(Inmate's

Responsibility).

There is also an expedited process for the review of complaints of

harassment or other misconduct by corrections officers or prison

employees. 7 NYCRR § 701.8.  Under this procedure, the inmate may (but

is not required to) report the misconduct to the employee's supervisor. *Id*. §

701.8(a)(Note).  The inmate then files a grievance under the normal

procedures outlined above, but all grievances alleging employee

misconduct are given a grievance number, and sent immediately to the

Superintendent for review. *Id*. § 701.8(a) & (b).

Under the regulations, the Superintendent or his designee shall

determine immediately whether the allegations, if true, would state a "bona

fide" case of harassment, and if so, shall initiate an investigation of the

complaint, either "in-house", by the Inspector General's Office, or by the

New York State Police Bureau of Criminal Investigations. *Id*. § 701.8(c) &

(d).  The appeal of the adverse decision of the Superintendent may be

taken to the CORC as in the regular grievance procedure. *Id*. § 701.8(h).  A

similar "special" procedure is provided for claims of discrimination against

an inmate. *Id*. § 701.9.  An inmate must appeal any denial of his grievances

to the highest available administrative level. *Martinez v. Williams*, 349 F.

Supp. 2d 677, 682 (S.D.N.Y. 2004).

In this case, defendants concede that plaintiff exhausted his

administrative remedies as to the excessive force claim (claim three) and

as to the due process challenge to his disciplinary hearing (claim one), they

argue that plaintiff has failed to exhaust his administrative remedies with

respect to his second, fourth, and fifth claims.

Defendants have submitted the affidavit of Cheryl Parmiter, the

Inmate Grievance Supervisor at Auburn Correctional Facility. Parmiter Aff.

(Dkt. No. 43-5).  Ms. Parmiter states that the only grievance filed by plaintiff

relating to the January 6, 2006 incident is AUB-46395-06. Parmiter Aff. ¶ 5.

Ms. Parmiter has attached a copy of the grievance, the investigation, and

the relevant appeal decisions. Parmiter Aff. Ex. B.  This grievance

references only the claim of excessive force, and only mentions the fact

that plaintiff is "hearing impaired."

Ms. Parmiter has also searched the facility's database for all the

grievances plaintiff filed while at Auburn. *Id.* Ex. A.  The grievance

regarding the excessive force incident is entitled "Fear for My Life," and it

was filed on January 11, 2006. *Id*. at 10.  Plaintiff filed four more grievances

in January of 2006, all of which had to do with property or mail in SHU. *Id.*

None of these grievances had to do with differing treatment (claim two);

denial of transfer or request for transfer because of disability (claim four); or

medical care of any kind (claim 5).  Thus, defendants have shown that

plaintiff has failed to exhaust three of his five claims.

In his response[8] to the motion for summary judgment, plaintiff

submits a document, consisting of a grievance form, dated January 18,

_____

[8] Most of plaintiff's response is devoted to the merits of his claims, however, the
exhaustion issue must be decided prior to any discussion of the merits of plaintiff's claims, and if
plaintiff has not exhausted his administrative remedies, the claims must be dismissed
regardless of their alleged merit.  The court also notes that plaintiff claims that he has not
received proper medical care at Southport and Elmira Correctional Facilities. (Dkt. No. 50 at 2).
Plaintiff cannot now raise medical care claims against unknown individuals from different
correctional facilities.  To the extent that he is attempting to support his allegation that he did not
receive proper medical care at Auburn by citing subsequent need for medical care, these
statements cannot change the fact that plaintiff did not exhaust his administrative remedies.

2006. (Dkt. No. 50 at 8[9]).  This alleged grievance deals with a claim that

plaintiff was not taken to the hospital "by procedure" after the alleged

assault on January 6, 2006. *Id.*  He also mentions that he has no hearing

aids. *Id.*  In a conclusory fashion, plaintiff claims that this grievance never

reached the grievance office. (Dkt. No. 50 at 2).  Although it is unclear, the

court will assume that plaintiff is attempting to claim that he tried to exhaust

but did not or could not, and thus, is attempting to assert that he should be

exempted from the exhaustion requirement.

The Second Circuit has developed a "three part inquiry" to determine

whether an inmate fulfilled the PLRA exhaustion requirement. *See Brownell*

*v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006)(citing *Hemphill v. State of*

*New York,* 380 F.3d 680, 686 (2d Cir. 2004)).  The inquiry asks (1) whether

the administrative remedies were available to the inmate; (2) whether

defendants' own actions inhibiting exhaustion estops them from raising the

defense; and (3) whether special circumstances justify the inmate's failure

to comply with the exhaustion requirement. *Id*.

The court notes that the list of grievances filed by plaintiff while at

---

[9] The document is marked "Exhibit D," but there are no other exhibits attached to plaintiff's response.  This document appears to be a copy of a document submitted by plaintiff during this case.  Defendants have also submitted a copy of this document, attached as Exhibit C to Ms. Parmiter's affidavit.

Auburn shows that he filed **_seventy-seven_** grievances between January 6, 2003 and January 31, 2006. Parmiter Aff. Ex. A at 1-10. The grievance process was clearly available to plaintiff, and he was no stranger to the process. During these three years, he complained about everything from his housing unit being cold, to being denied the opportunity to pray and being assaulted. He filed five grievances after the incident in question, only one of which dealt with the incident in question.

With respect to the second factor, there is no indication that the defendants took any action that would estop them from raising this affirmative defense. Plaintiff's conclusory statement that this "grievance" never "reached" the grievance office is insufficient to raise any issue of fact regarding estoppel. Finally, based upon plaintiff's extensive use of the grievance system, he has shown no special circumstances that would excuse the failure to exhaust his "failure to protect" or his medical care claims.

Plaintiff's second claim is incomprehensible. The complaint states merely that plaintiff's equal protection rights have somehow been violated, but there is no explanation of how the facts alleged in the complaint support such an allegation. None of the grievances, even the "grievance"

that plaintiff has submitted with his response to the defendants' motion for summary judgment mentions anything that would remotely approach a claim that he was treated differently than other inmates.  Thus, plaintiff's second, fourth, and fifth claims must be dismissed for failure to exhaust.

### B. Personal Involvement

It is well-settled that the personal involvement of a defendant is a pre-requisite to the award of damages in a section 1983 action. *See Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  Liability may not be based on the theory of *respondeat superior*. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.  A supervisory official is said to have been personally involved if that official directly participated in the infraction.  *Id*.  A supervisory official is said to have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong.  *Id*.  Personal involvement of a supervisory official is said to exist if he or she created a policy or custom under which unconstitutional practices

15

occurred or allowed such a policy or custom to continue.  *Id*.  Finally, a

supervisory official may be personally involved if he or she were grossly

negligent in managing subordinates who caused the unlawful condition or

event.  *Id*.

In this case, defendants argue that plaintiff has failed to sufficiently

show the personal involvement of defendants Goord and Graham.

Defendant Goord is the former Commissioner of the Department of

Correctional Services, and defendant Graham is the Superintendent of

Auburn Correctional Facility.  There is nothing in plaintiff's complaint that

would indicate that defendant Goord had ***any*** involvement in or knowledge

of any of plaintiff's claims.

Certainly neither defendant was involved in the alleged assault, and

although defendant Graham's signature is on the appeal decision of

plaintiff's grievance, it is clear from the document that the Superintendent

did not investigate the allegations. Parmiter Aff. Ex. B at 2.  The first

sentence of the appeal decision states that "[a] security supervisor

investigated this grievance." *Id.*  Where the supervisor's involvement in

plaintiff's case is limited to forwarding the complaint to the appropriate staff

for review, the supervisor has insufficient personal involvement to sustain a

section 1983 cause of action. *Ortiz-Rodriguez v. New York State Dep't of Correct. Services*, 491 F. Supp. 2d 392, 347 (W.D.N.Y. 2007)(citations omitted).  Thus, the entire complaint may be dismissed as against defendants Goord and Graham.

### C.  Due Process

As stated above, to the extent that plaintiff attempts to raise a "due process" claim regarding his medical care, he has not exhausted any such claim.  Plaintiff also claims that he was denied due process at his disciplinary hearing. (Claim one).  Plaintiff did appeal the disciplinary hearing, and ultimately obtained a reversal of the charges based on the fact that Captain Gummerson failed to fully address the issue of plaintiff's hearing impairment on the record. Defs. Ex. 7 at 2.  Thus, plaintiff has exhausted all remedies available to him on this claim through the disciplinary channels and the state court.

Defendants make two arguments for dismissal of this claim.  First, defendants argue that plaintiff has not named Captain Gummerson or any other individual that was responsible for the disciplinary hearing or any due process violations associated with it.  Second, defendants argue that plaintiff received all the process he was due at the hearing.  Although the

court agrees with the first argument, it will not make a determination as to the second argument.

Plaintiff in this case has not named Captain Gummerson, the individual who actually conducted the hearing and who plaintiff claims violated his due process rights by failing to properly address whether plaintiff was hearing impaired. A review of the hearing transcript shows, as plaintiff claims, that Captain Gummerson refused to read plaintiff's statement into the record, and stated that he "[didn't] really feel like reading it into the record." (T. at 4). Although Captain Gummerson did adjourn the hearing in order to obtain Nurse Ryerson's testimony, he did not completely investigate the issue. Nurse Ryerson testified that with his hearing aids, plaintiff has functional hearing. (T. 6). She also testified that plaintiff exaggerated his speech impediment. *Id.* It was never determined on the record, however, whether plaintiff actually had his hearing aids with him.

This court makes ***no finding*** regarding any potential due process claim because plaintiff has not named a defendant who is personally responsible for the disciplinary hearing. In order to begin a due process analysis, the court must determine whether plaintiff had a protected liberty interest in remaining free from the confinement that he challenges and then

18

determine whether the defendants deprived plaintiff of that liberty interest without due process. *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001); *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996).

In *Sandin v. Conner*, the Supreme Court held that although states may still create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995).

In this case, because plaintiff was sentenced to a year in SHU and lost one year of good time, the court could find that plaintiff had a liberty interest. *See e.g. Colon v. Howard*, 215 F.3d 227 (2d Cir. 2000)(305 days in SHU sufficient for a liberty interest).  Once a liberty interest is created, some of the due process rights afforded to inmates include a limited ability to call witnesses and present documentary evidence. *Wolff v. McDonnell*, 418 U.S. 539, 563-64 (1974).

Although defendants argue that plaintiff's due process claims are

"meritless," if plaintiff in this case is hearing impaired and could not hear or speak at his disciplinary hearing, he could have been denied the ability to present evidence. If plaintiff had named the correct defendant, the court could review plaintiff's due process claims on the merits.[10]  Since plaintiff has not named the proper defendant and none of the other defendants was personally involved in the hearing, this court will dismiss plaintiff's due process claims without prejudice.

## V.   Conclusion

The court will dismiss plaintiff's second, fourth and fifth claims with prejudice for failure to exhaust his administrative remedies, but will dismiss plaintiff's due process claim without prejudice to naming the proper defendant.  Plaintiff's claim of excessive force (claim three) is the only claim that will proceed at this time.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that defendants' motion for partial summary judgment

---

[10] The court would not be barred by *Edwards v. Balisok*, 520 U.S. 641, 648 (1997)(adopting the "favorable termination rule" articulated in *Heck v. Humphrey*, 512 U.S. 477 (1994)).  When an inmate loses good time as a result of a disciplinary hearing, and a favorable decision on his due process challenges would necessarily result in the invalidity of that punishment, the court cannot consider a claim for damages on the issue until plaintiff proves that the determination has been reversed on direct appeal, by executive order, by a state tribunal, or by a petition for habeas corpus. *Id.*  Since plaintiff in this case had the disciplinary determination reversed, the court would not be barred from deciding the due process issue on the merits in the right circumstances.

(Dkt. No. 43) is **GRANTED**, and it is

      **ORDERED**, that plaintiff's second, fourth, and fifth claims are

**DISMISSED WITH PREJUDICE**, and it is

      **ORDERED**, that plaintiff's due process claim (claim one) is

**DISMISSED WITHOUT PREJUDICE**.

Dated: September 28, 2009

United States District Court Judge